**512 WEST FIFTY-SIXTH STREET CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.**

No. 49.

Circuit Court of Appeals, Second Circuit.

Nov. 15, 1945.

Paul V. Wolfe, of New York City (Ralph W. Thomas, of New York City, of counsel), for petitioner.

Newton K. Fox, of Washington, D. C., Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and A. F. Prescott, Sp. Assts. to Atty. Gen., for respondent.

Before L. HAND, CHASE, and FRANK, Circuit Judges.

## L. HAND, Circuit Judge.

The petitioner seeks to review an order of the Tax Court, assessing against it a deficiency in income tax and excess profits tax for the year 1939. The case turns upon whether a gain on one parcel of real property, and a loss upon another, shall be classed as capital gains or losses, or as items of ordinary income: the taxpayer's only concern being that they shall both be put in the same class. The Commissioner and the Tax Court held that the gain on the first parcel should be classed as ordinary income, and all but a small part of the loss on the second as capital loss. The facts, which were not in dispute, are as follows. The taxpayer, incorporated in August, 1918, in that year leased a vacant parcel of land on West 56th Street in the Borough of Manhattan—the first parcel—for a term of twenty-one years at an annual rental of $10,000, with the privilege of renewal. It agreed to build a garage upon the property within a year at a cost of not less than $75,000; and in fact did so at a cost of $125,000. It sub-let the parcel, so improved, at substantial profit until the term expired in 1939, by which time it had amortized the whole value of the building by deductions for depreciation in its income tax returns. In that year it agreed with the lessor to surrender its privilege of renewal and to make certain stipulated repairs upon the building; and the lessor in consideration gave it a mortgage upon the fee in the sum of $50,000. This was the gain which the Commissioner assessed against it as ordinary income.

The other transaction was as follows. In 1926 one, Kilpatrick, who then owned ninety-seven per cent of the taxpayer's shares, and a firm of real estate operators purchased a parcel of vacant land on Jerome Avenue in the Borough of Bronx—the second parcel. Kilpatrick agreed to pay the purchase price and the cost of some proposed improvements, for which the operators were to prepare plans, and whose construction they were to supervise. They were thereupon to use their best efforts to sell the property, any profits to be shared: seventy-five per cent to Kilpatrick and twenty-five per cent to them. Kilpatrick advanced the money as agreed, title was taken in the name of a corporation other than the taxpayer, and the building was erected. In 1930 the corporation which held the title conveyed it to the taxpayer, which sold it in 1939 for $60,000; the value of the buildings at that time being $18,000, and of the land, $42,000. Before 1939 the taxpayer had amortized the value of the buildings by deductions for depreciation in its income tax returns to the extent of $10,500 leaving unamortized only about $3500. To that amount the Commissioner allowed the loss in computing the taxpayer's ordinary income, and deducted it from the gain on the first parcel; but a loss on the sale of the land he classed as capital, and deducted only $2000 from the gain of the first parcel. The figures are not in dispute, and the result is right if the Commissioner correctly classed the gain on the first parcel and the loss on the second.

Kilpatrick was an "operator," more properly a speculator, in real estate; it was his custom to do business by means of corporations, substantially all of whose shares he held, as he did the taxpayer's until 1927, when he transferred all his interest in it to his wife, although he remained an officer, and managed its affairs. Between 1918 and 1939 the taxpayer's income consisted of the rents derived from the first and second parcels, and from a third parcel in Manhattan, acquired in 1929, but lost on foreclosure at some time not disclosed. All three parcels—the only property owned by the taxpayer—had been bought for sale and were continually held for that purpose, and it had no other business.

We assume—for reasons that will appear when we come to the second parcel —that it would be correct to treat the first parcel as a "capital asset," had it not been for that clause of § 117(a) (1) of the Internal Revenue Code, 26 U.S.C.A.Int.Rev. Code, § 117(a) (1), which excludes property "of a character which is subject to the allowance for depreciation provided in section 23(l)." The taxpayer agrees, and in view of the authorities would in any event be obliged to concede, that a lease is a wasting asset and that § 23(l) covers it. Helvering v. F. & R. Lazarus & Co., 308 U.S.

252, 60 S.Ct. 209, 84 L.Ed. 226. The purpose of dividing the means of production between capital assets and wasting assets, and imposing different rates upon gains in the disposition of each, was to diminish the inducement to withhold capital assets from sale, which a taxpayer could do if they were not wasted in use. That purpose did not extend to those means of production which were wasted in use, because the owner could not withhold them; they went into what he sold by decrements —decrements all of which were as much part of the cost as raw materials or wages. The taxpayer's interest in the first term, was such a wasting asset; and the second term if he chose to take it would be like the first. It is true that, when the lease expired, nothing remained to sell except the option to renew, and it might be argued that an option cannot be a wasting asset; that a lessee must exercise it once and for all at the end of the term, and that, since it has no duration, it cannot progressively depreciate. We should however recur to the motive which led to the creation of the class of "capital assets" in the first place; it was to prevent the "freezing" of such assets as do not waste when exploited. An option is not of that kind; it cannot be kept as an option, it must be exercised or it will perish; once it is exercised the resulting term begins to waste at once. There is thus no danger that it will be kept off the market, inert and economically idle. Indeed, since the lessee may specifically enforce it in New York, it is indistinguishable from an equitable interest in the land, conditional upon acceptance by the lessee. Smith v. Rector, etc. of St. Philip's Church, 107 N.Y. 610, 620, 14 N.E. 825, 12 St.R. 783; Carr v. Ellison, 20 Wend. 178; Crawford v. Kastner, 26 Hun 440, 63 How. Pr. 90; Bullock v. Cutting, 155 App.Div. 825, 140 N.Y.S. 686; Loughman v. Lillienthal, 195 App.Div. 867, 187 N.Y.S. 401. We cannot attach any meaning to the taxpayer's argument that the first term had expired; so it had, but that had nothing whatever to do with the character of the option which was the subject of the transaction.

▆ Whether the second parcel was a "capital asset" depends upon that clause in § 117(a) (1) which excludes property "held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." The Treasury distinguishes between the buildings upon the land and the land itself, because buildings, even though held primarily for sale, are wasting assets and excluded under the clause we have just discussed in considering the renewal. That distinction the Commissioner observed in the case at bar and the taxpayer has had the advantage of it. Land is not, however, a wasting asset, and the question here is whether it was held in a "trade or business," for concededly it was "held * * * primarily for sale." We might agree that Kilpatrick was engaged in a business: that of speculating in real property; like a speculator in stocks and bonds. Gruver v. Commissioner, 4 Cir., 142 F.2d 363. Indeed, in an active market "operators" in real property at times do not even take title but sell the contracts before the time for completion arrives. We may even assume for argument that such an "operator" might conduct his "business" by means of wholly owned corporations, although that is not altogether certain. Moline Properties v. Commissioner, 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499. Be that as it may, the taxpayer at bar would not profit from such an assumption, because after 1927 Kilpatrick no longer had any interest in its shares: his wife owned all but a trifling number. His "business" was not her "business"; nor hers, his. For reasons satisfactory to himself, he had severed himself from the taxpayer; and it made not the least difference how completely he continued to control and direct its affairs.

Hence we are to judge whether the taxpayer was engaged in any business by its own activities, divorced from Kilpatrick's. So judged, there can be not the least doubt that it had no "business," as § 117(a) (1) uses the word. It never held in all more than the two parcels we have mentioned and that which was foreclosed. Whatever the reason, the disposition of the two hung fire for years: the first parcel for twenty years; the second, for thirteen. Indeed, the Tax Court was altogether justified in concluding that the first parcel was not held "primarily for sale" at all. If so, the putative "business" consisted in acquiring, and after long delay, in selling one parcel of property and losing another by foreclosure. Much more continuous activity in buying and selling is necessary to constitute a "business." Phipps v. Commissioner, 2 Cir., 54 F.2d 469; Snell v. Commissioner, 5 Cir., 97 F.2d 891; Fuld v. Commissioner,

2 Cir., 139 F.2d 465; Harriss v. Commissioner, 2 Cir., 143 F.2d 279, 280.

Quite aside, therefore, from any hesitation which we must feel in reversing a decision of the Tax Court upon such an issue, we have not the least question that the result was right.

Order affirmed.