THOMAS REED VREELAND AND DIANA D. VREELAND, PETITIONERS, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 61542.  Filed October 15, 1958.

*Louis Reiss, Esq.*, for the petitioners.
*Clarence P. Brazill, Jr., Esq.*, for the respondent.

OPINION.

OPPER, *Judge:*

*I.*

The question here of whether petitioner was individually engaged in the business of "promoting, managing, financing and making loans to a number of corporations" so as to make an admittedly bad debt deductible as a business debt [1] is complicated by the fact that practically

SEC. 23. DEDUCTIONS FROM GROSS INCOME.
(k) BAD DEBTS.—

* * * * * * *

(4) NON-BUSINESS DEBTS.—In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term "non-business debt" means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.

throughout the period covered by the evidence petitioner was working for and otherwise connected with corporations which were themselves in the business of promoting and financing other enterprises.

Our conclusion that petitioner as an individual was not engaged in the business of carrying on promotions is grounded upon our inability to find from the evidence that the overwhelming proportion of the ventures in which he participated was in fact his individual activity as opposed to that of the corporations with which he was associated. It is recognized by both parties that the business of a corporation is not that of the individuals connected with it. *Burnet* v. *Clark*, 287 U. S. 410; *Charles G. Berwind*, 20 T. C. 808, affirmed per curiam (C. A. 3) 211 F. 2d 575. And this must be as applicable to the business of promoting as it is to any other activity.

Moorgate, with which petitioner was associated for about 10 years ending in 1948, and Cement and General, with which he was connected in the tax year 1950, were both primarily in the promoting and financing business. Petitioner, to be sure, was permitted to engage in ventures of his own, and to some small extent he did so; and he was free to engage "privately in any of the ventures that were being undertaken by him for Moorgate Agency." But with the limited exceptions noted, the promotional activity (as opposed to mere investment) appears to have been undertaken by petitioner directly or indirectly as an officer and employee of one or the other of the promoting companies which employed him; and we have been unable to find from the evidence that in any of these instances he himself as an individual and on his own account participated in the capacity of promoter. Petitioner referred to his "own indirect interest" [2] in the Moorgate investments and we think that when he bought stock or made loans to the Moorgate companies he was not himself acting as a promoter but rather as an investor or speculator, the promotion itself having been the act of Moorgate.

Similarly, when petitioner undertook to liquidate the corporations in which he already held stock or made loans to them in order to keep them alive, he was not carrying on an independent business but conducting himself as any stockholder might who has funds invested in an enterprise. See *Higgins* v. *Commissioner*, 312 U. S. 212.

The cases on which the petitioner relies are not in point. The authority contained in such cases as *Weldon D. Smith*, 17 T. C. 135, revd. 203 F. 2d 310, *Henry E. Sage*, 15 T. C. 299, and *Vincent C. Campbell*, 11 T. C. 510, is applicable

---

[2] Petitioner testified:

Q. Well, to quote your affidavit, "consequently, in order to permit these companies to develop and in order to keep them alive for the protection of Moorgate Agency's investment and my own indirect interest therein, I commenced advancing personal funds to Moorgate Agency against its demand notes, and later on commenced to make direct loans to companies in which Moorgate Agency was interested."

\*     \*     \*     \*     \*     \*     \*

Q. Is that not correct?
A. Yes.

only to the exceptional situations where the taxpayer's activities in promoting, financing, managing, and making loans to a number of corporations have been regarded as so extensive as to constitute a business separate and distinct from the business carried on by the corporations themselves. Whether the petitioner is employed as a director or officer in 1 corporation or 20 corporations, he was no more than an employee or manager conducting the business of the various corporations. [*Charles G. Berwind, supra* at 815.]

Eliminating the instances in which his corporate employers rather than petitioner must be considered the original promoters, and petitioner no more than an investor, corporate officer, or both,[3] only a handful of activities over more than a 10-year period [4] can be attributed to petitioner personally, most of which were attempts on his part which turned out unsuccessfully.[5] See *Koch* v. *United States*, (C.A. 9) 264 F. 2d 334. No more than in the case of a real estate subdivision can we view such sparse and infrequent transactions as business activity, *Allen Moore*, 30 T. C. 1306; *512 W. Fifty-Sixth Corp.* v. *Commissioner*, (C. A. 2) 151 F. 2d 942, affirming a Memorandum Opinion of this Court, nor characterize petitioner as one engaged independently in promotion or financing as a business.

That this parallel is not fanciful can be illustrated by a hypothesis based on the present record. Petitioner's asserted motive for the attempted formation of the few independent projects in which he engaged was "to build up the corporations and eventually dispose of them." Had he done so, on his theory they would have been held by him for sale to customers in the ordinary course of his business. Yet who can doubt that, as in the real estate cases, if he had profitably secured purchasers for his interests the proceeds would have been viewed—probably at his insistence—as capital gains?

---

[3] *1939–1949* (*Moorgate*)

| | | | |
|---|---|---|---|
| Anachemia | Propeller Wood | Chromite, Ltd. | Exploration Associates |
| Kemdico | Andreef I | | Trans-American |
| | Andreef II | | Prospect Associates |
| | Northern Plastics, Ltd. | | |
| | Northern Plastics, Inc. | | |

*1950*
Anachemia
Kemdico
Prospect Associates
Cement and General

[4] *1939–1949*
  Skilam, Inc. (1946, Loan)
  Enterprise Development (1948)
  Pressure bomb (1948, petitioner had no apparent financial interest)
  Cartoonist (1949)
*1950*
  Canadian physicist
  International Bank (concluded in 1951)
  Canadian mining venture
[5] Pressure bomb
  Cartoonist
  Canadian physicist
  Canadian mining venture

To this it may be added that even if it could be found that petitioner was independently engaged in some kind of promotional business, the debt as to which he claims the deduction could not be said to have arisen in connection with any such business of his own. The debtor was Anachemia, and as our findings demonstrate, Anachemia was clearly "promoted" by Moorgate and not by petitioner. Once petitioner became a creditor, it was understandable for him to attempt to protect his interest as such, and in the course of that operation to make additional loans, or investments, in the corporation in which he was interested. But this no more entitles him to have the debt considered as one incurred in his trade or business than would be the case with any other investor. *Wheeler* v. *Commissioner*, (C. A. 2) 241 F. 2d 883, affirming per curiam a Memorandum Opinion of this Court.

We conclude that the debt in question was deductible only as a nonbusiness bad debt.

## II.

Petitioner bought the concededly worthless stock of one of his fellow stockholders purportedly in order to facilitate the liquidation and sale of a company in which they were jointly interested. This he treated as increasing the amount of the bad debt. Apparently petitioner had other business associations with the vendor of the stock, but whatever his motives, and although the stock was worthless when acquired, respondent for some reason has allowed a deduction as a short-term capital loss. In the view we have taken of the main issue this is identical with the tax result of a bad debt, a nonbusiness bad debt being treated similarly to a short-term capital loss.[6]

Although the parties have not said so, it thus appears that there could have been no real issue on this aspect of the case except as the principal question were decided in petitioner's favor. Having held otherwise in this respect, we find it unnecessary to consider further the supposed second issue.

*Decision will be entered for the respondent.*

---

[6] See footnote 1 ; sec. 117 (a) (3), I. R. C. 1939.