MAX M. BARISH AND ETTA BARISH, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 64841. Filed March 31, 1959.

*Sidney J. Matzner, Esq.*, for the petitioners.

*Richard W. Janes, Esq.*, and *Cyrus A. Johnson, Esq.*, for the respondent.

FORRESTER, *Judge:* The respondent has determined a deficiency of $3,015.38 in the petitioners' income tax for the year 1953. The sole issue is whether the losses suffered from the worthlessness of certain loans made by Max Barish should be treated as business or nonbusiness bad debts.

### FINDINGS OF FACT.

Some of the facts have been stipulated and are so found.

Max M. Barish, hereinafter referred to as the petitioner, and Etta Barish, husband and wife, filed their joint Federal income tax return for the calendar year 1953 on the cash basis with the district director of internal revenue at Los Angeles, California.

The petitioner's principal business interest and activity during 1953 was in connection with Max Barish, Inc., a new-car dealership in which he had had a substantial stock interest for several years. During 1953 petitioner owned 50 per cent of the stock of said corporation, was its president and a director, and, as he admitted on cross-examination "[was] the driving force behind this business."

Said corporation's Federal income tax return for the fiscal year beginning November 1, 1952, and ending October 31, 1953, was signed

by the petitioner in his capacity as president. It shows sales of $2,518,832.55 and Schedule E presents the following information:

| Names and addresses of officers | Official title | Time devoted to business | Percentage of corporation's stock owned | | Amount of compensation |
|---|---|---|---|---|---|
| | | | Common | Preferred | |
| Max M. Barish, 10717 Wilshire Blvd., West L.A., Calif. | President_____ | 90% | 50% | _____ | $24,000 |
| Howard Barish, 14744 McCormick St., Van Nuys, California. | Secretary_____ | 100% | None | _____ | 12,130 |
| Lois Barish, 9581 Alcott St., Los Angeles, Calif. | Treasurer_____ | Part | None | _____ | 2,100 |
| Barney Miller, 2916 South Oakhurst, Los Angeles, Calif. | Assistant treas_____ | 100% | None | _____ | 8,230 |
| | | | | | $46,460 |

Petitioner does not contest any of the facts as shown by the above portions of said return except the showing that he devoted 90 per cent of his time to said business. As to this item, when asked if it were correct, he testified without further explanation "No, it couldn't be." Yet the record shows that in 1953 this business employed 35 to 40 persons, had sales of over $2,500,000, that petitioner was there every day it was open and was its "driving force." We conclude, and find as facts, all of the above excerpted items from said income tax return.

During the period from 1944 through 1953, the petitioner had numerous other business interests. The following table shows those which were promoted and organized by him and the nature of his interest:

| Name of enterprise | Nature of petitioner's interest | Type of business | Period during which interest was held | | | | | | | | | | Dollar amount of petitioner's interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1944 | 1945 | 1946 | 1947 | 1948 | 1949 | 1950 | 1951 | 1952 | 1953 | |
| Barish Motors | Proprietor | Auto dealership and repair | ? | ? | XY | XY | XY | XY | XY | XY | ? | | Not shown. |
| Vernon Western Recreation | Proprietor | Bowling alley | | ? | | | | | | | | | Not shown. |
| Hydraulic Jack Venture | Joint venturer | Hydraulic jacks | | ? | | | | | | | | | $1,300. |
| Albro Industries | Partner | Auto seat covers | | | | | ? | | | | | | $3,000. |
| Max Barish, Inc. | 50% stockholder | New car dealership | | | | | | ? | | | | | Not shown. |
| Monogram Homes Builders | Partner | Apartment building construction. | | ? | XY | XY | XY | XY | XY | XY | XY | XY | $5,000. |
| Travelers Motion Picture Co. | Partner | Special railroad motion picture equipment. | | | | | | ? | | | | | Not shown. |
| Catalina Apartments | Partner | Apartment building construction. | | | | | | | | XY | XY | X[z] | Not shown. |
| Gasoline Service Station | "1½ Interest," type not shown. | Service station | | | | | | | | ? | | | Not shown. |
| Big Town Motors | Stockholder | Used car dealership | | | | | ? | ? | XY | XY | XY | XY | Not shown. |
| Ace Investment Co. | Stockholder | Investment company | | | | | ? | XY | XY | XY | XY | XY | Not shown. |
| Massie Engineering Corp | Stockholder | Electronic relays | | | | | | | | | ? | ? | Not shown. |
| Bluebell Manor | Partner | Apartment buildings | | | | | | | | Y | Y | X[z] | $14,000. |
| Occidental Kingsley Apts. | Partner | | | | | | | | | ? | Y | ? | $47,000. |
| Screw Products of America | Stockholder | Apartment buildings | | | | | | | | | XY | XY | Not shown.—petitioner got stock in payment of his loan to another organizer. |

Key: X—denotes first half of year.
Y—denotes last half of year.
?—denotes failure of proof as to exact period in year.
z—sold July 31, 1953.

In addition to the above equities petitioner became a creditor of 4 of the above enterprises as follows:

| Name of firm (debtor) | Amount of loan | Date loan extended | Maturity date of loan | Date loan repaid | Rate of interest | Evidence of loan |
|---|---|---|---|---|---|---|
| Max Barish, Inc_____ | Unknown_ | Unknown_____ | Unknown___ | Unknown___ | Unknown___ | Unknown. |
| Ace Investment Co_ | $1,000 | Aug. 27, 1946___ | On demand_ | Unknown___ | 3%_____ | Note. |
|  | 1,000 | May 15, 1947__ | On demand_ | Unknown___ | 3%_____ | Note. |
|  | 2,500 | July 14, 1947__ | On demand_ | Unknown___ | 3%_____ | Note. |
| Massic Engineering_ | 4,000 | Unknown_____ | Unknown___ | Unknown___ | Unknown___ | Unknown. |
| Gasoline Service Station. | 1,900 | Unknown_____ | Unknown___ | Not repaid__ | Unknown___ | Unknown. |
| Total_____ | 10,400 |  |  |  |  |  |

In addition to all of the above, petitioner had made the following loans for undisclosed purposes and which were outstanding during 1953:

| Name of firm (debtor) | Amount of loan | Date loan extended | Maturity date of loan | Date loan repaid | Rate of interest | Evidence of loan |
|---|---|---|---|---|---|---|
| Lorne Corsaut_____ | $2,500.00 | June 5, 1952___ | Unknown___ | Unknown___ | Unknown___ | Unknown. |
| Lorne Corsaut_____ | 1,000.00 | June 26, 1952__ | Unknown___ | Unknown___ | Unknown___ | Unknown. |
| Lorne Corsaut_____ | 1,000.00 | July 10, 1952__ | Unknown___ | Unknown___ | Unknown___ | Unknown. |
| Lorne Corsaut_____ | 1,000.00 | July 25, 1952__ | Unknown___ | Unknown___ | Unknown___ | Unknown. |
| Lorne Corsaut_____ | 1,000.00 | Aug. 6, 1952__ | Unknown___ | Unknown___ | Unknown___ | Unknown. |
| Rubinstein_____ | 3,360.32 | Dec. 8, 1952__ | On demand_ | Unknown___ | Blank_____ | Note. |
| Insurance Mart_____ | 5,000.00 | Nov. 30, 1953__ | Unknown___ | Unknown___ | Unknown___ | Unknown. |
| Rainbow Turkey Ranch: |  |  |  |  |  |  |
| Unsecured_____ | 7,500.00 | Unknown_____ | Unknown___ | Unknown___ | Unknown___ | Unknown. |
| Secured by several small trust deeds_____ | 7,500.00 | Unknown_____ | Unknown___ | Unknown___ | Unknown___ | Unknown. |
| Total_____ | 29,860.32 |  |  |  |  |  |

Petitioner reported $830.29 interest income in 1953 on Schedule C (Profit (or Loss) from Business or Profession) of his return. His salary, as reported by him for said calendar year, was $19,000 from Max Barish, Inc., and $1,000 from Barman Auto Sales, Inc., hereinafter referred to as Barman.

Barman, a used-car dealership, was incorporated on December 18, 1951, had a fiscal year ending March 31, and had 3,000 shares of common stock (its only class) outstanding on March 31, 1953, and March 31, 1954. Said stock was shown on Barman's balance sheets at $1 per share.

On May 29, 1952, the petitioner acquired either 24.25 or 24.5 per cent of the Barman stock (i.e., about 727.5 shares), at a total cost of $485 (66⅔ cents per share).

Schedule E (Compensation of Officers) of Barman's returns shows the following:

| Name | Title | Time devoted to business | Percentage of corporation's stock owned | | Amount of compensation |
| --- | --- | --- | --- | --- | --- |
| | | | Common | Preferred | |
| Fiscal year beginning April 1, 1952 | | | | | |
| Morris R. Rothman | President | All | 48.5 | | $39,000 |
| Max M. Barish | Secretary treasurer | Part | 24.25 | | 12,200 |
| Frank B. Sanders | Vice president | Part | 24.25 | | 6,800 |
| | | | | | $58,000 |
| Fiscal year beginning April 1, 1953 | | | | | |
| Morris R. Rothman | President | 100% | 48.5 | | $15,000 |
| Frank B. Sanders | Vice president | Part | 24.5 | | 6,000 |
| Max M. Barish | Secretary treasurer | Part | 24.5 | | 3,000 |
| | | | | | $24,000 |

At a time undisclosed by the record, petitioner loaned Barman $16,750 on its 2-year, 6 per cent notes. It is stipulated that these notes became worthless in 1953.

The petitioner was not in the trade or business of lending money in 1953, and the losses due to the worthlessness of his loans to Barman were not proximately related to any trade or business of the petitioner during 1953.

### OPINION.

The petitioner contends that his loans to Barman constituted business bad debts deductible in full under section 23(k)(1) of the Internal Revenue Code of 1939 [1] and based upon the dual premises, as stated by petitioner, that he was "in the business of promoting, organizing and financing businesses and of lending money."

Respondent contends they were nonbusiness loans and deductible only in a limited amount under section 23(k)(4) of the Internal Revenue Code of 1939.[2]

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(k) BAD DEBTS.—

(1) GENERAL RULE.—Debts which become worthless within the taxable year \* \* \* This paragraph shall not apply in the case of a taxpayer, other than a corporation, with respect to a non-business debt, as defined in paragraph (4) of this subsection. \* \* \*

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(k) BAD DEBTS.—

(4) NON-BUSINESS DEBTS.—In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term "non-business debt" means a debt \* \* \* other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.

1. Considering petitioner's contentions in the same order as advanced, we need not and do not decide whether petitioner has sustained the heavy burden imposed by law [3] of proving that he was "in the business of promoting, organizing and financing businesses."

Petitioner has devoted much time and effort in this direction, showing his organization and promotion activities in 15 distinct enterprises in 10 years and separate financing activity (if personal loans can be so characterized) as to 4 of them.

However, as concerns his loans of $16,750 here at issue, we are given no facts from which it could even be inferred that petitioner had had anything at all to do with promoting, organizing, or financing his debtor, Barman Auto Sales, Inc. Indeed, the inferences are all to the contrary to wit:

(1) Barman was incorporated on December 18, 1951. Petitioner acquired his stock on May 29, 1952, vendor unknown.

(2) Barman's common stock was shown as its only class and as 3,000 shares outstanding at $1 per share, and all held by 3 shareholders, as per its balance sheets of March 31, 1953, and March 31, 1954.

(3) Petitioner acquired either 24.25 per cent or 24.5 per cent of said stock at 66⅔ cents per share.

(4) Neither the dates, the purposes, the security (if any) nor the manner in which evidenced [4] is shown as to petitioner's loans to Barman.

From the above it might be inferred that petitioner made a bargain purchase of an equity security from some third party, and, as shown by Barman's income tax returns, succeeded in becoming an officer and a salaried employee of Barman and his loans to Barman may have been made to protect or enhance those positions.

It is axiomatic that some proximate relationship must be shown between an alleged business loan and the alleged business. *Thomas Reed Vreeland*, 31 T.C. 78; *S. D. Ferguson*, 28 T.C. 432, affd. 253 F. 2d 403 (C.A. 4, 1958); *Wheeler* v. *Commissioner*, 241 F. 2d 883 (C.A. 2, 1957), affirming T.C. Memo. 1955–138; also cf. *Dalton* v. *Bowers*, 287 U.S. 404. Petitioner has not even attempted to show such relationship, presumably because it did not exist.

2. Turning now to petitioner's contention that he was in the business of lending money, the record shows that, excepting the Barman loans, petitioner had made 9 loans, totaling $29,860.32, to 4 borrowers, which loans were still outstanding in 1953. One of these loans was

---

[3] See *Thomas Reed Vreeland*, 31 T.C. 78; *Aubrey S. Nash*, 31 T.C. 569; *Dominick J. Salomone*, 27 T.C. 663; *Hadwen C. Fuller*, 21 T.C. 407.

[4] The stipulation of facts recites that Barman's corporate records reflect that the corporation issued notes bearing 6 per cent interest and maturing in 2 years; neither such records nor the notes are in evidence and the record is otherwise silent.

made in 1953, 6 were made in 1952, and as to the other 2, the date made is not shown.

Even if we add the 6 loans made to the 4 businesses which petitioner had "promoted, organized and financed," the total is only raised to something over $40,260.32,[5] and as it is not shown that these 6 loans were outstanding in 1953, they should not be considered. *Jan G. J. Boissevain*, 17 T.C. 325.

In addition to all of the above, petitioner shows a loan of $5,000 made to his partner in Travelers Motion Picture Co. and presumably in 1949. Nothing further concerning this loan is shown and petitioner has presented no other or further loans for our consideration.

As we stated in *Charles G. Berwind*, 20 T.C. 808, 815, affd. 211 F. 2d 575 "The authority * * * [to deduct bad debts as business losses] is applicable only to the exceptional situations where the taxpayer's activities in * * * making loans * * * have been regarded as so extensive as to constitute a business." See also *Dominick J. Salombne*, 27 T.C. 663; *Hadwen C. Fuller*, 21 T.C. 407; *Higgins* v. *Commissioner*, 312 U.S. 212.

Petitioner here devoted 90 per cent of his time to a business having sales of over $2,500,000, and was the "driving force" of such business, receiving a salary of $19,000 from it in the year in issue. As against this he shows outstanding loans in 1953 of $29,860.32 (plus the $16,750 here in contention) and interest income of $830.29.

We hold that petitioner has failed in the proof of his second contention and that his bad debt losses in 1953 of $16,750 were not proximately related to any trade or business of his during such year.

*Decision will be entered for the respondent.*

---

[5] Amount of petitioner's loan to Max Barish, Inc., not shown.