JAMES D. JARVIS AND MARY C. JARVIS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 67492.   Filed April 22, 1959.

*Lester Fleming, Esq.*, for the petitioners.
*Drew R. Tillotson, Esq.*, for the respondent.

MULRONEY, *Judge:* The respondent determined a deficiency in income tax and an addition to tax under section 294(d)(2) of the Internal Revenue Code of 1939 [1] for the taxable year 1953 in the respective amounts of $3,062.26 and $297.59. The question in the case is whether certain loans made by petitioner to a corporation of which he was a stockholder, are deductible only as nonbusiness bad debts within the purview of section 23(k)(4) or whether said amounts are deductible as business bad debts under section 23(k)(1).

### FINDINGS OF FACT.

Some of the facts were stipulated and they are found accordingly.

Petitioners, James D. Jarvis and Mary C. Jarvis, husband and wife, are residents of Wichita, Kansas, and they filed their joint income tax return for the year 1953 with the district director of internal revenue at Wichita, Kansas. Petitioner James D. Jarvis will hereinafter be referred to as the petitioner.

Saturn Drilling, Inc., sometimes hereinafter referred to as Saturn, was organized by John McKnab on April 3, 1952, under the laws of the State of Kansas, with an authorized capital of $10,000, comprised

---

[1] All section references are to the Internal Revenue Code of 1939, as amended.

of 100 shares of common stock, each share having a par value of $100. The stockholders of Saturn were as follows in 1953:

|  | Shares |
| --- | --- |
| John McKnab | 37½ |
| Roy Sandstrom | 25 |
| Irving Hafner | 25 |
| James D. Jarvis | 12½ |

Saturn, having its headquarters in Wichita, Kansas, was engaged in the business of exploring, including drilling, for oil and gas. Petitioner was at all times a minority stockholder in Saturn, owning 12½ shares of the capital stock, for which he paid $1,250 in April 1952.

In 1949, petitioner organized, under the laws of the State of Kansas, a corporation known as the Diesel Equipment Company, Inc., sometimes hereinafter referred to as Diesel. Petitioner owned 63.25 per cent of the common stock and 51.72 per cent of the preferred stock of Diesel, for which he paid the amount of $40,300, and in 1953 petitioner made loans to this corporation in the amount of $20,000. Petitioner served as president and a director of Diesel from the date of its organization. The earned surplus of Diesel on June 30, 1953, was $97,224.34. Petitioner reported a salary of $12,000 from Diesel on his income tax return for the taxable year 1953. The Diesel Equipment Company, Inc., held a franchise of the Detroit Diesel Engine Division of General Motors Corporation for the sales, service, and distribution of Diesel engines.

On May 1, 1952, petitioner loaned Saturn $3,750 and on June 22, 1953, petitioner loaned Saturn $2,500. These loans were evidenced by Saturn's demand notes and as a result of the insolvency of Saturn, the loans became worthless in the year 1953. Diesel Equipment Company, Inc., also sold drilling equipment and petitioner made the loans to Saturn for the purpose of inducing it to purchase such equipment from Diesel Equipment Company, Inc.

Petitioner in his income tax return for the year 1953 treated said loans to Saturn as business bad debts that became worthless in the year 1953. Respondent determined that the notes of Saturn which became worthless during the year 1953 represented nonbusiness bad debts, which determination gives rise to the deficiency in question.

In addition to petitioner's business as an organizer of, and an officer and stockholder of, Diesel, petitioner engaged in other business activities in the year 1953 and prior years. In 1941 petitioner acquired a 25 per cent interest in a partnership known as H. P. Gott Manufacturing Company, Winfield, Kansas, a large supplier of water cans and water coolers. In 1945 petitioner organized and financed Aero Finance Company, which engaged in the business of making chattel mortgage loans on privately owned aircraft. He sold this wholly

owned business in 1949. In 1947 petitioner purchased an interest in the McGrew Distributing Company, a distributor of major appliances, to which he made loans totaling at one time $15,000. He sold his interest in this corporation in 1948. In 1947 he promoted and was one of the incorporators of Midland Manufacturing Company, engaged primarily in research and development of gas space heaters. He sold his interest in this company in 1949 and he made loans in 1953 to this company in the amount of $20,000. In 1951 petitioner promoted and helped to organize a corporation known as Crystal Laboratories, Inc., which was changed to a partnership in 1952, to engage in the manufacture of finished crystals. In 1951 he organized the Jarvis Manufacturing Company, Inc., as a wholly owned subsidiary of Diesel Equipment Company, Inc., to produce precision parts and assemblies for major aircraft producers on a subcontract basis. He made loans to this corporation during 1952 and 1953 totaling $70,000. In 1952 he was instrumental in organizing and financing a partnership known as Wichita Quartz Cutters, to fabricate raw quartz into blanks.

### OPINION.

The only question is whether petitioner's loans to Saturn, which admittedly became worthless in 1953, were business bad debts under section 23 (k) (1). Petitioner argues he was, in 1953 and prior years, engaged in the business of promoting corporations and as a part of this business it was his practice to make loans to such corporations; that the loans he made to Saturn were incurred in his business of, and had a direct connection with, his business as a promoter.

Whether the evidence of petitioner's promotional activities is sufficient to show such a business engagement, we need not decide. He concedes he did not promote, organize, or participate actively in the management of Saturn. He testified he made the loans to Saturn in the hope of obtaining business for Diesel Equipment Company, Inc., of which he was president and controlling stockholder, the purpose being to induce Saturn to buy drilling equipment from Diesel Equipment Company, Inc. Although the hope was realized and Saturn did buy and pay for some $10,000 worth of equipment from Diesel Equipment Company, Inc., it cannot be said the loans were proximately related to petitioner's alleged promoter business even if petitioner's engagement in such business should be found. *Max M. Barish*, 31 T.C. 1280; *Thomas Reed Vreeland*, 31 T.C. 78; and *Samuel Towers*, 24 T.C. 199.

A similar situation existed in *Thomas Reed Vreeland, supra*, and there we said:

even if it could be found that petitioner was independently engaged in some kind of promotional business, the debt as to which he claims the deduction could

not be said to have arisen in connection with any such business of his own. The debtor was Anachemia, and as our findings demonstrate, Anachemia was clearly "promoted" by Moorgate and not by petitioner. * * *

Petitioner makes a somewhat vague argument which he states on brief is under "the benefit theory." As we understand it, the contention is that the loans in question were made for the purpose of benefiting, and they did benefit, his alleged promoter business, and therefore they are business bad debts. The argument, as he states it on brief, is as follows:

It is the contention that the bad debt benefited petitioner's business of promoting, organizing, financing and developing business ventures. The significant fact is not that petitioner was a stockholder in Diesel, but rather, that the promotion, organization, financing and management of Diesel was but one phase of petitioner's business activities of promoting business ventures. This theory is based not upon the benefit to Diesel derived from these loans, but instead upon the benefit to said business activities of petitioner.

As we understand petitioner's argument, it seems to be that he was engaged in the business of promoting and financing and managing business ventures and since Diesel was one of his promoted corporations, any loan designed to help Diesel's business would be a promotional activity. He admits he was not a promoter of Saturn, to which the loan was made. Even if the record of petitioner's activities in promoting corporations were sufficient to establish a separate promoter business, the loan in question would not be a promotional activity. The loan to a corporation, not in the alleged family of petitioner-promoted or -managed corporations, appears to be an isolated transaction. The loan was made for the purpose of securing a sale of drilling equipment by Diesel. The selling of drilling equipment was no part of petitioner's alleged business of a promoter.

When petitioner made the loans to Saturn in order to secure it as a customer for his controlled corporation, Diesel, he was not by any stretch of imagination engaged in promotion. The loan might well have benefited Diesel's business but petitioner's business was not Diesel's business (*Burnet* v. *Clark*, 287 U.S. 410) and the loan to Diesel's customer, designed to help Diesel, was not a promotional activity even if the evidence warranted a holding that petitioner was engaged in a separate promoter business.

The Commissioner determined addition to tax under section 294(d)(2) for substantial underestimation of estimated tax for the taxable year 1953. Petitioner makes no argument with respect to this determination and we sustain respondent on this issue.

*Decision will be entered for the respondent.*