Jesse W. Bush v. Commissioner.
Bush v. Commissioner
Docket Nos. 4973-65, 3187-66.
United States Tax Court
T.C. Memo 1968-39; 1968 Tax Ct. Memo LEXIS 260; 27 T.C.M. (CCH) 177; T.C.M. (RIA) 68039; February 29, 1968, Filed ,jesse W. Bush, pro se, 614 Persons Bldg., Macon, Ga. David S. Meisel, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: Respondent determined a deficiency in petitioner's income tax of $6,982.53 for the taxable year 1960. Subsequently, respondent determined a deficiency in petitioner's income tax of $3,283.79 for the taxable year 1963. On joint motion of the parties, the two matters were consolidated for the purpose of their submission under Rule 30 of the Tax Court Rules of Practice.
The issues for decision are: (1) As to 1960, whether the losses sustained by petitioner in that year on a note in the amount of $25,000, from the Manchester Manufacturing Company, Inc., and on payments made as a guarantor of certain of the company's trade accounts are deductible as business bad debts pursuant to section 166 of the Internal Revenue Code of 1954. [1]
*262 (2) As to 1963, whether the losses sustained by petitioner in that year on the worthlessness of capital stock of Superior Engineering and Manufacturing Company, Inc., and on payments made as a guarantor of a loan to that corporation are deductible as business bad debts pursuant to section 166 of the Code. General Findings of Fact All of the facts having been stipulated, they are so found. Jesse W. Bush, hereinafter referred to as the petitioner, and his wife, Harriet E. Bush, filed a joint income tax return for 178 the year 1960 with the district director of internal revenue, Atlanta, Georgia. The petitioner filed an individual income tax return for the year 1963 with the district director of internal revenue, Atlanta, Georgia. Petitioner was a legal resident of the State of Georgia on the dates of the filing of the petitions herein. The petitioner is an attorney and has actively practiced his profession in Macon, Georgia, for about 20 years. On joint Federal income tax returns for the following years the petitioner and his wife, Harriet E. Bush, reported interest earned on loans in the following amounts: Year
Amount
1956
$2,831.09
1957
6,273.72
1958
9,388.34
1959
9,391.36
*263 These loans, all made in the name of Harriet E. Bush, were secured by first mortgages on real estate and all the funds used for the making of these loans and all interest income from them were kept in a separate bank account in the name of Harriet E. Bush. All the income from these loans was reported by Harriet on her separate state income tax returns. When petitioner and Harriet were divorced in 1963, all the notes outstanding from the loan transactions were found to be her property and were ordered, in that proceeding, delivered to her. Findings of Fact Issue 1 The Manchester Manufacturing Company, Inc., hereinafter referred to as Manchester, was incorporated in December 1956 for the purpose of manufacturing infants' playpens. The petitioner was the organizing attorney and represented the corporation from the date of its incorporation until its demise. Prior to December 26, 1958, there were outstanding 328.63 shares of capital stock of Manchester owned by the following shareholders in the following amounts: Shareholder
Shares
L. L. Gellerstedt
10.00
Wright Gellerstedt
10.00
Chrystall Starr
75.00
William E. Tribble
5.00
John M. Law
50.00
J. C. Peeler
10.00
Solomon F. Dowis, Jr. 168.63
Total
328.63
*264 Manchester was in need of additional capital in order to continue operations and had been unable to secure financing for that purpose. On December 26, 1958, petitioner acquired 60.25 percent of the outstanding stock of Manchester from the following shareholders for a nominal or no consideration: Shareholder
Shares
L. L. Gellerstedt
10.00
Wright Gellerstedt
10.00
Chrystall Starr
75.00
William E. Tribble
5.00
John M. Law
50.00
Solomon F. Dowis, Jr. 48.00
Total shares acquired
198.00
Manchester sustained operating losses of approximately $18,000, $13,000, and $15,000 for the taxable years 1957, 1958, and 1959, respectively. The petitioner transferred funds to Manchester on the following dates in the following amounts: Date
Amount
12-27-58
$10,000
1-16-59
5,000
3-25-59
2,000
5- 8-59
1,000
5-23-59
4,000
6-20-59
1,000
9- 5-59 2,000
Total
$25,000
In view of the transfers of funds referred to above, on November 2, 1959, Solomon F. Dowis, Jr., in his capacity as president of Manchester, executed a 90-day note in the face amount of $25,000 payable to the order of the petitioner. In order to secure payment of the note *265 on November 2, 1959, Solomon F. Dowis, Jr., also in his capacity as president of Manchester, executed a bill of sale to petitioner covering the personal property of Manchester. Petitioner assigned his interest in the note and bill of sale to the First National Bank and Trust Company, Macon, Georgia, to secure his personal indebtedness to the bank. The bank in the early part of 1960 foreclosed on the security listed in the bill of sale. At the foreclosure, the petitioner bid the property in at its fair market value, $8,000. In addition to the transactions described above, the petitioner made payments to third party creditors for the benefit of Manchester on July 6, 1959, in the amount of $306 and on August 21, 1959, in the amount of $917.80. These payments were made upon the 179 petitioner's guaranty of certain trade accounts of Manchester. The petitioner lost $18,223.82 [2] on its dealings with Manchester as described above. *266 On their 1960 joint income tax return, petitioner and Harriet deducted a loss of $18,233.80 reported as having been sustained "on loans made to Manchester Mfg. Co., Woodland, Georgia, in connection with taxpayer's long established business of making loans." In the notice of deficiency, the respondent determined that to the extent of $18,223.82 the loss sustained by petitioner on his transactions involving Manchester were nonbusiness bad debts, allowable as short-term capital losses. Alternatively, the respondent determined that the transfers of funds to Manchester constituted contributions to capital and therefore the resulting loss was a capital loss. Issue 2 The Superior Engineering and Manufacturing Company, Inc., hereinafter referred to as Superior, was incorporated in January 1959 and started operations in April 1959. The petitioner, upon the incorporation of Superior, purchased 10 shares of its capital stock at a cost of $1,000. On June 6, 1961, petitioner purchased an additional 26 shares of the capital stock of Superior at a cost of $2,600. On December 18, 1961, the petitioner transferred $500 to Superior without taking any security for the repayment thereof. *267 During the taxable year 1963, the capital stock of Superior owned by petitioner became worthless. In 1962, the petitioner and three other shareholders of Superior became guarantors of a $5,000 loan made to Superior. The petitioner's pro rata liability on such guaranty was $1,250. Superior became insolvent in 1963, during which year the petitioner paid $1,250 in extinguishment of his liability as guarantor on the loan described above. On his 1963 income tax return petitioner deducted $5,350 as a "business bad debt." In the notice of deficiency, the respondent determined that petitioner's losses on account of capital stock and debts of Superior constituted capital losses. The loss of $3,600 on worthless stock was allowed as a longterm capital loss. The other bad debts of $500 and $1,250 were allowed as nonbusiness bad debts to be treated as short-term capital losses. Opinion Issue 1 The issue involved in the year 1960 is whether petitioner's losses of $18,223.82, in that year are deductible as business bad debts under section 166(a)(1)[3] or as nonbusiness bad debts under section 166(d)(1). [4] Petitioner maintains the former while respondent contends the latter. In the alternative, *268 respondent maintains that the losses arose from the loss of capital contributions by the petitioner. However, we need not consider respondent's alternative position because, even assuming that petitioner's payments created valid debts rather than capital contributions, we find that the losses on these debts were nonbusiness in nature and thus deductible only as capital losses. The first question presented involves the deductibility as a business bad debt of the loss sustained by petitioner on the $25,000 note *269 from Manchester. As detailed in the Findings of Fact, petitioner received a note and a bill of sale to secure debt in exchange for $25,000 loaned to Manchester. Petitioner, in turn, assigned his interest in these instruments to the First National Bank and Trust Company, Macon, Georgia, to secure his personal indebtedness to the bank. The bank in the early part of 1960 foreclosed on the security listed in the bill of sale at which point petitioner bid in the property at its fair market value of $8,000 and thus sustained a loss in the amount of $17,000. [5] 180 The definition of a business bad debt arises by negative implication from section 166(d)(2) which provides: SEC. 166(d)(2). * * * the term "nonbusiness debt" means a debt other than - (A) a debt created or acquired (as the case may be) in connection with a trade or business *270 of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business. In order for a bad debt to be considered "business" in nature, "It is axiomatic that some proximate relationship must be shown between an alleged business loan and the alleged business." Max M. Barish, 31 T.C. 1280 (1959); cf. sec. 1.166-5(b), Income Tax Regs. Thus, petitioner in the instant case must show that the $17,000 loss incurred by him, was incurred in proximate relationship to a trade or business carried on by him. It is well established that the business of a corporation is not that of its stockholders and therefore the requisite "trade or business" is not provided by the fact that petitioner was a stockholder of Manchester. Burnet v. Clark, 287 U.S. 410 (1932). According to petitioner's tax return for 1960, the loans to Manchester were "in connection with taxpayer's long established business of making loans." *271 However, the record indicates that all of the loans, the interest from which were reported on petitioner's joint income tax returns in the years 1956 to 1959, were made in the name of Harriet, petitioner's wife, were secured by first mortgages on real estate, and all the funds used in making these loans and all interest income from them were kept in a separate bank account in the name of Harriet. Furthermore, when petitioner and Harriet were divorced in 1963, all the notes outstanding from the loan transactions were found to be her property and were ordered, in that proceeding, delivered to her. It therefore appears, and we so find, that assuming arguendo the existence of a lending business, it was that of petitioner's wife and that the loan to Manchester was a personal undertaking of petitioner without any proximate relationship to his wife's business (if it was such) of making loans. The record is barren of any showing by the petitioner that the loan to Manchester was part of any continuous and extensive pattern of lending by the petitioner so that this case might fall within "the exceptional situation where the taxpayer's activities in * * * making loans * * * have been regarded *272 as so extensive as to constitute a business." Charles C. Berwind, 20 T.C. 808, 815 (1953). Therefore we hold that the petitioner was not engaged in the business of lending money so as to qualify his loss for deduction as a business bad debt on that ground. Cf. Max M. Barish, supra; Estate of William P. Palmer, Jr., 17 T.C. 702 (1951). The record also fails to contain sufficient evidence upon which this Court might find that petitioner's loans herein to a corporation, in which he was a shareholder and for which he performed legal services, bore a proximate relationship to petitioner's practice of law. Cf. Robert H. McNeill, 27 T.C. 899 (1957), affd. on this issue but reversed on another, 251 F. 2d 863 (C.A. 4, 1958). In sum, petitioner has failed to establish that the loans in question were anything other than advances to a financially distressed corporation of which petitioner was a major shareholder, which advances bore a proximate relation to no activity of petitioner save his efforts to salvage his investment in Manchester. Therefore, we hold the $17,000 loss sustained by petitioner to be a nonbusiness bad *273 debt. The second question with respect to the taxable year 1960 involves the dedctibility of several losses incurred by petitioner on payments made as a guarantor of certain of Manchester's trade accounts. It is established law that amounts paid on a guaranty of another's debt are deductible, if at all, only under the bad debt rather than the business loss section of the Code. Putnam v. Commissioner, 352 U. S. 82 (1956). Section 1.166-8(b), Income Tax Regs., [6] provides, in effect, that the character, as business or nonbusiness bad debt, of a guaranty loss depends on the proximate relationship of the debt to the petitioner's trade or business.
*274 181 Similarly to our conclusion in regard to the $17,000 loss discussed above, we find that the record in this case is insufficient to establish any proximate relationship between the losses on the guaranties of Manchester's trade accounts and any trade or business in which petitioner was engaged. Therefore, we hold the guaranty losses sustained by petitioner in the amounts of $306 and $917.80 to be nonbusiness bad debts. Issue 2 Petitioner, on his 1963 income tax return, claimed an ordinary deduction of $5,350 as a "business bad debt." This deduction consisted of the following amounts in regard to the following transactions: a $3,600 loss arising from the worthlessness in 1963 of petitioner's stock in Superior; a $500 loss on a loan by petitioner in that amount made to Superior on December 18, 1961; and a loss of $1,250 as petitioner's pro rata liability as guarantor of a $5,000 loan made to Superior. Respondent maintains that all the losses described above are capital in nature, $3,600 as a long-term capital loss, and $500 and $1,250 as short-term capital losses. Petitioner's tax treatment of the $3,600 loss on the worthlessness of his Superior stock as a bad debt implies *275 that it was a loss arising from a debtor-creditor relationship. However, ownership of stock in a corporation does not create any such relationship and a loss on the worthlessness of corporate stock must be deducted, not under the bad debt provisions of section 166, but rather under the specific "worthless securities" provision of section 165(g). [7] Therefore, we agree with respondent's treatment of the loss in question as a long-term capital loss, rather than with petitioner's treatment of it as an ordinary deduction. As for petitioner's $500 loss on *276 his loan to Superior in that amount, again we need not consider respondent's alternative argument that the $500 was in reality a contribution to capital, because, assuming the existence of a bona fide debt, we find it to be nonbusiness in character. The previous discussion with regard to the necessity for showing that the debt is proximately related to a trade or business of the petitioner is equally applicable to this item. Again petitioner has failed to establish such a proximate relationship. Cf. Max M. Barish, supra; Estate of William P. Palmer, Jr., supra.Therefore, we conclude that the $500 loss is a nonbusiness bad debt and deductible only as a short-term capital loss. Finally, concerning the tax treatment to be accorded petitioner's loss on his payment as guarantor of a loan made to Superior, the discussion with regard to petitioner's guaranty of trade accounts of Manchester is equally applicable to this item. Since petitioner had made no showing of a proximate relationship between the debt and a trade or business of his, we hold that the $1,250 loss is a nonbusiness bad debt and deductible only as a short-term capital loss. Decisions will *277 be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise stated.↩
2. There appears to be a discrepancy between this figure and the other stipulated facts. The loss on the mortgage foreclosure is $17,000 ($25,000 - $8,000), and the payments to third party creditors amounted to $1,223.80, a total of $18,223.80, not $18,223.82. However, since the parties stipulated the losses to be $18,223.82, we will accept that figure as the correct one.↩
3. Sec. 166(a). General Rule. - (1) Wholly Worthless Debts. - There shall be allowed as a deduction any debt which becomes worthless within the taxable year. ↩
4. Sec. 166(d). Nonbusiness Debts. - (1) General Rule. - In the case of a taxpayer other than a corporation - (A) subsections (a) and (c) shall not apply to any nonbusiness debt; and (B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months.↩
5. Section 1.166-6, Income Tax Regs.↩, provides that if mortgaged property is sold for less than the amount of the debt, the loss is measured by the amount of the indebtedness remaining unsatisfied, if uncollectible, here $17,000.
6. Sec. 1.166-8. Losses of guarantors, endorsers, and indemnitors. (b) Corporate obligations. The loss sustained during the taxable year by a taxpayer other than a corporation in discharge of all of his obligations as a guarantor of an obligation issued by a corporation shall be treated, in accordance with section 166(d) and the regulations thereunder, as a loss sustained on the worthlessness of a nonbusiness debt if the debt created in the guarantor's favor as a result of the payment does not come within the exceptions prescribed by section 166(d)(2)(A) or (B)↩. * * *
7. Sec. 165(g) Worthless Securities. - (1) General Rule. - If any security which is a capital asset becomes worthless during the taxable year, the loss resulting therefrom shall, for purposes of this subtitle, be treated as a loss from the sale or exchange, on the last day of the taxable year, of a capital asset. (2) Security Defined. - For purposes of this subsection, the term "security" means - (A) a share of stock in a corporation; * * *↩