JAMES J. and CHRISTIANE L. M. HOOGERWERF, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hoogerwerf v. Commissioner
Docket No. 871-74.
United States Tax Court
T.C. Memo 1976-186; 1976 Tax Ct. Memo LEXIS 223; 35 T.C.M. (CCH) 811; T.C.M. (RIA) 760186; June 9, 1976, Filed James J. Hoogerwerf, pro se. Melvern Stein, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a $3,159.26 deficiency in petitioners' 1970 Federal income tax. The only issue is whether certain advances petitioner made to a closely held corporation which became defunct were deductible as business bad debts under section 166. [1]
FINDINGS OF FACT Some facts were stipulated *224 and are found accordingly.
Petitioners, husband and wife, resided in Long Beach, California, when they filed their petition herein. They timely filed their 1970 Federal income tax return with the District Director of Internal Revenue, Los Angeles, California. James J. Hoogerwerf (hereinafter petitioner) was employed by the Signal Companies, Inc., formerly Signal Oil and Gas Company, from January 1966 to May 1973, as an accountant. Petitioner is a Certified Public Accountant licensed to practice in California, but he did not practice public accounting during 1970. Pursuant to a March 1967 advertisement in The Los Angeles Times by Rudy L. Furst (hereinafter Furst) for VCL Furniture Stores (hereinafter VCL), petitioner met with Furst and the owners of VCL to consider whether to provide interim financing of accounts receivable from furniture sales made by VCL to its customers. Petitioner agreed to provide interim financing for VCL, and he factored accounts receivable for VCL during April and May of 1967. This factoring of accounts receivable project terminated as of August 1967 because of nonpayment by VCL of manufacturers' and suppliers' accounts. After the factoring of the *225 VCL accounts receivable in April and May of 1967, Furst approached petitioner in June about financing purchases of surplus Armed Forces materials for resale to private industry. Petitioner advanced approximately $18,000 for purchase of such materials from June through September of 1967. In June of 1967, Furst also interested petitioner in participating in the organization, financing and operation of a hobby school to be known as Kaleidoscope 58, Inc. (hereinafter Kaleidoscope). Furst, petitioner, and Robert L. Fox, a friend of Furst who is an attorney, entered a Pre-Incorporation Subscription Agreement on June 14, 1967, which provided that they would be incorporators and directors of Kaleidoscope, that they would also be officers of the corporation and receive a salary for services rendered thereto, and that each of them would receive a percentage of the gross income of the corporation and a percentage of any franchise sales the corporation might make. Petitioner was to receive 50 shares of Kaleidoscope for $5,000; Fox was to receive an equal number of shares for an equal payment; and Furst was to receive 25 shares in return for "promotional" activities. On July 1, 1967, an *226 amendment to the Agreement provided in part as follows: 2. In addition to the capital investment of $5000 each to be made by Fox and Hoogerwerf, they each agree to loan or cause to be loaned to the corporation to be formed the sum of $10,000 as, when, and to the extent required by the corporation, and in equal amounts. In accord with the Pre-Incorporation Subscription Agreement, in July of 1967 petitioner and Fox each paid $5,000 as consideration for their shares to be issued in Kaleidoscope. In August of 1967, petitioner and Fox each transmitted a $5,000 check to the corporation pursuant to the amendment quoted above. In September of 1967, enrollment fees were inadequate to cover expenses, and the corporation required more working capital. Petitioner accordingly provided more working capital in that month of $2,500, based on Furst's misrepresentation that Fox had paid in an equal amount. On October 17, 1967, petitioner called upon Furst to honor an oral guarantee of petitioner's advance of funds to Kaleidoscope by issuing a written note for amounts advanced by petitioner. Furst and his wife accordingly endorsed a $12,500 note on that date in favor of petitioner. The *227 note had a stated interest rate of four percent. That rate was of little concern to petitioner; he felt the note was the only vehicle by which he might protect his rights and get his principal back. Petitioner made no interest-bearing loans to other entities or ventures other than that note. The surplus Armed Forces materials project continued until early December of 1967, when Furst left the Los Angeles area for personal reasons. Furst returned several months later and advised petitioner that he encountered financial difficulties and was unable to honor the Kaleidoscope note until a later date. Petitioner then sought legal advice. His attorney deposed Furst and concluded that Furst was judgment-proof; he accordingly advised petitioner that it would be futile to sue Furst. No articles of incorporation for Kaleidoscope were ever filed with the Secretary of State of California, and no stock was ever issued. Although never formally incorporated, however, Kaleidoscope held itself out as a corporation and carried out normal corporate activities. When petitioner made the advances to Kaleidoscope, he was employed full-time as an accountant by Signal Oil and Gas Company. *228 Petitioner was motivated to advance additional sums to Kaleidoscope by Furst's representation that it was a wonderful opportunity and that it would be a tremendous success. Petitioner was motivated to invest in the surplus Armed Forces materials project by Furst's representation that if petitioner was not interested in joining the venture, Furst had friends that would jump at a chance to participate in this very lucrative business. Petitioner was vice-president of Kaleidoscope, and during the few months in 1967 during which it was in business petitioner worked on its affairs from 7 to 10 in the evening. Petitioner's anticipated compensation rate from Kaleidoscope was based upon his ownership of forty percent of the venture. Petitioner never received any income from the school, however.
Petitioner claimed a $12,500 business bad debt deduction on petitioners' 1970 Federal income tax return, computed by adding the $5,000 paid in July of 1967, the advance of $5,000 in August of that year, and the advance of $2,500 made in September of that year. ULTIMATE FINDINGS OF FACT The $5,000 advance of July of 1967 by petitioner to Kaleidoscope constituted an equity investment. The *229 $5,000 advance of August of 1967 and the $2,500 advance of September of 1967 were debts which were not created in connection with, and were not incurred in the course of, a trade or business of petitioner. Petitioner was not in the trade or business of lending money. The securing of the $12,500 promissory note by petitioner was an effort to salvage his advances to Kaleidoscope. OPINION The only issue for decision is whether petitioner correctly deducted certain advances made to Kaleidoscope, a closely held corporation organized by petitioner and two other individuals, as fully deductible business bad debts under section 166. [2] We agree with respondent's position that the initial $5,000 advance made by petitioner to Kaleidoscope was a capital investment and that later advances of $5,000 and $2,500 were not created in connection with or incurred in the course of a trade or business of petitioner.
*230 With regard to the initial $5,000 advance, petitioner made that advance pursuant to a Pre-Incorporation Subscription Agreement which specified that that amount was in return for his ownership in Kaleidoscope. Petitioner was to receive 50 shares, or 40 percent of the issued and outstanding stock, in return for the $5,000. Petitioner has presented very little evidence to contradict respondent's determination that this did constitute a capital investment, and petitioner, of course, has the burden of proof to overcome respondent's determination. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. We accordingly hold that the initial $5,000 advance constituted a capital investment by petitioner and that such advance was not deductible as a business bad debt under section 166. [3]
*231 As to the later advances, petitioner has not met the burden of sustaining his contention that he was engaged in the trade or business of making loans. See Whipple v. Commissioner,373 U.S. 193 (1963), rehearing denied 374 U.S. 858 (1963); David H. Betts,62 T.C. 536, 539 (1974). Petitioner made no other interest-bearing loans. What other factoring and financing activities he engaged in during 1967 were not part of a regularly carried on business, but rather were responses to initiatives by Furst. And petitioner has made no showing of business loan activity in 1970, the year in which the loss is claimed. See Rudolf A. Zivnuska,33 T.C. 226, 237-238 (1959). Petitioner has therefore not made an adequate showing to bring himself within the narrowly defined definition of a trade or business for this purpose. "A trade or business requires the expenditure of a substantial amount of time and effort, and usually entails keeping books and maintaining an office." Hadwen C. Fuller,21 T.C. 407, 414 (1953). Furthermore, as we stated in Rudolf A. Zivnuska, supra at 238, [there] is no indication *232 that petitioner had, for money-lending purposes, any business office, business organization, business stationery, or business forms to evidence loans; that he kept any business books; that he either advertised, or otherwise held himself out, as a lender of money; * * * or that he employed any of the methods or practices normally used by those who carry on a money-lending business. We accordingly have found as a fact that petitioner was not engaged in the trade or business of lending money. We therefore hold that the later advances of $5,000 and $2,500 also do not constitute fully deductible business bad debts under section 166. Cf. I. Hal Millsap, Jr., 46 T.C. 751, 757 (1966), affd. 387 F. 2d 420 (8th Cir. 1968); Max M. Barish,31 T.C. 1280, 1285-1286 (1959). Decision will be entered for the respondent. Footnotes
1. Statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. SEC. 166. BAD DEBTS. (a) General Rule.-- (1) Wholly worthless debts.--There shall be allowed as a deduction any debt which becomes worthless within the taxable year.
* * *
(d) Nonbusiness Debts.-- (1) General rule.--In the case of a taxpayer other than a corporation-- (A) subsections (a) and (c) shall not apply to any nonbusiness debt; and (B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. (2) Nonbusiness debt defined.--For purposes of paragraph (1), the term "nonbusiness debt" means, a debt other than-- (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.↩
3. Although this technically represents a worthless stock loss under section 165(g)(1) and (2)(B), respondent has agreed for purpose of this case that this loss is deductible in 1970 as a capital loss, as set forth in the notice of deficiency. Petitioner was accordingly spared the burden of proving worthlessness of that loss for a year before 1970.↩