STUART M. SALES AND LEONA TERRY SALES, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 85475. Filed December 29, 1961.

*Irwin G. Waterman, Esq.,* for the petitioners.
*Arthur Clark, Jr., Esq.,* for the respondent.

FAY, *Judge:* The Commissioner determined a deficiency in petitioners' income tax for 1955 of $2,224.31.[1] The sole question for decision is the character of a loss sustained by a partnership in 1955.

FINDINGS OF FACT.

Some of the facts have been stipulated and they are found accordingly.

Petitioners Stuart M. and Leona Terry Sales are husband and wife residing in Louisville, Kentucky. They filed a timely joint Federal income tax return for the taxable year 1955 with the district director of internal revenue for the district of Kentucky. (An amended 1955 return was filed on June 6, 1956, for a reason not pertinent here.)

In November 1949 petitioners and certain other individuals, all of whom are related to petitioners by blood or marriage, formed a partnership known as Stuart Enterprises. The capital contributions of the partners totaled $80,000. (Leona held a $24/200$ interest in the partnership profits and losses. Stuart was a member of the partnership solely as trustee for petitioners' two children.)[2] The partnership agreement stated, in part:

1. The Partnership shall be for the carrying on of the business of Real Estate, Ownership and Operation of Commercial, Industrial and Residential Buildings, and such other business and enterprises as the parties hereto may from time to time hereafter agree.

Consolidated Royal Chemical Corporation during the years in question was engaged in manufacturing and marketing medical and cosmetic preparations in Chicago. The stockholders of Consolidated were all parents or grandparents of the partners in Stuart Enterprises.

Sometime about 1953 Consolidated undertook the distribution of a liquid hair spray which was marketed under the trade name of Liquinet. This preparation was manufactured by Liquinet Corporation which held registered trademarks on the trade name in Canada and

---

[1] The Commissioner's deficiency notice also determined deficiencies for the years 1956, 1957, and 1958. The petition sets forth no allegations of error for these years. On respondent's motion the Court entered an order of dismissal for failure properly to prosecute as to these years.

[2] The deficiency in this case arises from Leona's partnership interest only. The children's interests are not before us.

the United States. Although the hair spray was a successful item, Liquinet Corporation was not itself successful. Sometime after Consolidated took over the distribution of Liquinet, it or its shareholders acquired a controlling stock interest in Liquinet Corporation. When Liquinet began to sell successfully, even without extensive advertising, Consolidated decided to engage in a substantial national advertising campaign to increase sales. One of the forms this advertising took was the sponsorship of a network television program, the Arthur Murray Dance Party.

At about this time, in November 1953, the partnership, without making an investigation other than some interfamily discussions, loaned $120,000 to Liquinet Corporation and received in return Liquinet Corporation's collateral promissory note containing an unconditional promise to repay the $120,000 in monthly installments of $3,000 plus interest at the rate of 12 percent per year on the unpaid balance. As security for the obligation, Liquinet executed separate assignments to the partnership of its registered Canadian and United States trademarks. The security at the time did not have substantial value. The partnership obtained the money for the loan by mortgaging its Chicago industrial property. It paid interest on said loan at 4¾ percent.

Soon after undertaking the advertising program, several of Consolidated's larger competitors entered the market with products similar to Liquinet which were advertised nationally. Liquinet's sales declined markedly.

In 1955 Liquinet Corporation was in default in its monthly payments on the loan. The partnership commenced a legal action in an Illinois court and secured a judgment of foreclosure upon the assignments of Liquinet's registered trademarks. The partnership purchased the trademarks at the ensuing judicial sale for the sum of $35,000. In the above action the partnership also secured a deficiency judgment against Liquinet in the amount of $84,325.46, plus statutory interest.

On its partnership return for 1955 the partnership reported a net operating loss in the amount of $67,059.70, of which $8,534.99 was computed as the portion thereof attributable to Leona's interest in it. The net operating loss reported by the partnership was attributable to a deduction of $71,400 claimed as a business bad debt loss resulting from the transaction with Liquinet Corporation. The business generally carried on by the partnership was the ownership of industrial property in Chicago, and aside from the loan to Liquinet the partnership engaged in no other activities.

On Schedule H of their joint return for 1955 petitioners reported a loss of $8,014.16 from the partnership, representing Leona's distrib-

utive share of the $67,059.70 net operating loss claimed by the partnership.

In the deficiency notice the Commissioner increased petitioners' partnership income by $8,534.99 and explained:

[the] amount due from Liquinet Corporation, which became worthless in the year ending August 31, 1955, in the amount of $71,400.00 * * * is disallowed as a business bad debt * * * and is allowed as a non-business bad debt subject to the limitations of Section 166(d)(1)(B) of the Internal Revenue Code of 1954.

OPINION.

The issue here involves the correctness of respondent's adjustment disallowing the bad debt deduction in the amount of $67,059.70 claimed by the partnership in computing its 1955 partnership income.[3] The petitioners contend that the loss sustained by the partnership as a result of its loan to Liquinet is deductible either as a business bad debt under section 166(a) of the Internal Revenue Code of 1954[4] or as a loss arising from a transaction entered into for profit under section 165(c)(2). The deduction claimed by the petitioners here represents Leona's distributive share of the loss reported by the partnership on its information return for 1955. The respondent's position, stated in the disjunctive, is (a) that the loan to Liquinet was in no way proximately related to the real estate business carried on by the partnership, and (b) that the partnership was not engaged in the business of lending money for profit or of rehabilitating insolvent businesses.

In the first place, it is clear that the transaction between the partnership and Liquinet established a debtor-creditor relationship. Therefore, any deduction for the loss resulting therefrom can be had only under section 166 and not section 165, for the reason that such sections are mutually exclusive. *Spring City Co.* v. *Commissioner*, 292 U.S. 182 (1934), rehearing denied 292 U.S. 613 (1934); *Langdon L. Skarda*, 27 T.C. 137, affd. 250 F. 2d 429 (C.A. 10, 1957).

Since the respondent agrees that the debt became worthless to the extent claimed by the partnership in 1955, by the process of elimination the single question remaining is whether the debt is deductible under section 166(a) as a business bad debt or under section 166(d) as a nonbusiness bad debt. Section 166(a) provides that "There shall be allowed as a deduction any debt which becomes worthless within the taxable year." However, section 166(d) excludes from the application of section 166(a) any nonbusiness debt, which is defined by negative implication as a debt other than (1) a debt created or acquired in connection with taxpayer's trade or business; or (2) a debt, the

---

[3] A partnership computes its taxable income in the same way as an individual (sec. 703(a), I.R.C. 1954) with specific exceptions not here material listed in sec. 703(a)(1) and sec. 703(a)(2).

[4] All section references, unless otherwise indicated, are to the Internal Revenue Code of 1954.

loss from the worthlessness of which is incurred in the taxpayer's trade or business. Consequently, if the partnership is to have its deduction escape classification as a nonbusiness bad debt, the petitioners must prove that the debt and the loss from its worthlessness bore a proximate relationship to a business in which the partnership was engaged at the time the debt was created or acquired. Sec. 1.166–5(b), Income Tax Regs.; *Aubrey S. Nash*, 31 T.C. 569, 573 (1958). The determination as to the business or nonbusiness character of the debt and the requisite proximate relationship of the debt to the business of the taxpayer involves a question of fact. *Samuel Towers*, 24 T.C. 199 (1955), affd. 247 F. 2d 233 (C.A. 2, 1957), certiorari denied 355 U.S. 914 (1958); *Robert Cluett, 3rd*, 8 T.C. 1178 (1947).

In the instant case the petitioners do not contend that the loan was proximately related to any preexisting business being conducted by the partnership and, even if they had, the evidence does not support such a claim. Rather, it is the petitioners' contention that the making of a single loan is sufficient in and of itself to establish a trade or business of lending money where the amount involved and the rate of return indicate a commercial venture for profit.

This Court has held on numerous occasions that the right to deduct bad debts as business losses is applicable only to the exceptional situations where the taxpayer's activities in making loans have been regarded as so extensive and continuous as to elevate that activity to the status of a separate business. *Max M. Barish*, 31 T.C. 1280, 1286 (1959); *H. Beale Rollins*, 32 T.C. 604, 613 (1959), affd. 276 F. 2d 368 (C.A. 4, 1960); *Estate of William P. Palmer, Jr.*, 17 T.C. 702 (1951). We do not believe, in view of the factual matrix of this case, that the making of an isolated loan of $120,000 is so extensive an activity as to justify a finding by this Court that the partnership was engaged in the business of lending money. Certainly, if such solitary loan had been made by an individual it would not qualify as a business debt; and no convincing reason has been suggested as to why it should take on a different character when made by a partnership. Therefore, we hold that the loss resulting from the worthlessness of the Liquinet debt is deductible only as a nonbusiness debt under section 166(d).

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

FISHER, *J.*, dissenting: I agree with the first two paragraphs of Judge Mulroney's dissent.

Although my conclusion is the same as that of Judge Mulroney, I do not agree with all of the reasoning in the third paragraph of his dissent. I think that the so-called extent-of-activities test is a factor to be considered in determining whether or not the transaction is to be classified as business or nonbusiness. I think it applies in principle to a partnership as well as to an individual. I do not, however, agree that the test is controlling in all cases, and I do not think it is controlling here. If, under all the circumstances of a particular case, it is established that the transaction in question is in fact a business transaction, a bad debt deriving therefrom must be treated accordingly. It is my view, upon the record in the instant case, that the bad debt under consideration is a business bad debt even though it arose out of the only loan made by the partnership.

BRUCE, *J.*, agrees with this dissent.

---

MULRONEY, *J.*, dissenting: I respectfully dissent.

Stuart Enterprises stood to make about $14,000 partnership profits if the loan of money, which it borrowed at 4¾-percent interest, was repaid at 12-percent interest in accordance with the loan obligation. Respondent does not argue the loan was a family accommodation. It was made for the plain purpose of securing partnership profits and it served no individual purpose of the partners apart from their partnership interests—which distinguishes this case from the authorities cited by the majority where partnership loans were involved, and it was held they were designed to serve the individual interests of the partners.

I would hold any financial transaction entered into by a partnership, solely in pursuit of partnership profits, would be a business transaction of the partnership and the worthlessness of a debt involved in such a transaction would be considered a business bad debt in computing the partnership's taxable income.

I do not agree with the majority that any extent-of-activities test should be applied to see if a partnership's transaction, which was engaged in solely for partnership profit, was a business or nonbusiness transaction. That test is applicable when the issue is whether an individual is entitled to a business or nonbusiness bad debt deduction. Leona did not and could not (*S. Stanwood Menken*, 8 B.T.A. 1062) take a bad debt deduction or proportionate part of a bad debt deduction for what respondent admits was a bona fide partnership loan. She took a partnership operating loss deduction and the issue is whether the partnership, in computing and reporting its taxable income was entitled to take the loss from the worthlessness of its loan

as a business or nonbusiness [1] bad debt deduction. The business character of the partnership loan is established by the fact that it was made for partnership profits and the business character of a partnership which is by definition an "unincorporated organization, through or by means of which any business, financial operation, or venture is carried on * * *." Sec. 7701(a)(2), I.R.C. 1954. I would hold Stuart Enterprises was entitled to a business bad debt deduction in computing its taxable income and consequently petitioner was entitled to her proportionate share of the partnership's operating loss.

WITHEY, J., agrees with this dissent.

---

[1] It is to be noted sec. 166(d) providing for nonbusiness bad debt losses applies to "a taxpayer other than a corporation." A partnership must report its taxable income, sec. 703, but it is not a taxpayer, sec. 701.