T.C. Memo. 1999-104


UNITED STATES TAX COURT


JOSEPH F. AND DOROTHY M. GERMAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12954-96.          Filed March 31, 1999.


<u>L. Patrick O'Day, Jr.</u>, for petitioners.

<u>Gail K. Gibson</u>, for respondent.


MEMORANDUM OPINION


THORNTON, <u>Judge</u>:  Respondent determined a deficiency in
petitioners' 1990 Federal income tax in the amount of $21,890.
The issue for decision is whether certain purported loans made by
petitioner husband (hereinafter petitioner) are deductible as a

business bad debt under section 166(a).[1]  We hold that they are not.

Background

The parties have stipulated some of the facts, which are so found.  The stipulated facts and the accompanying exhibits are incorporated herein by this reference.  When they filed their petition, petitioners were married and resided in Hankinson, North Dakota.

From about 1948 until 1984, petitioner earned his living as a farmer.  In 1984, he ceased farming and began to sell off the more than 800 acres of farmland he had acquired during his years of farming.

In the late 1970's, petitioner met Wayne Aaland (Aaland), a contractor who built stores and motels.  Together, they formed several corporations, identified in the record as Magna Development, Magna Realty, and American Energy (the corporations).  The corporations were formed for purposes that included constructing and insulating homes.  Petitioner received a 20-percent interest in each of the corporations.

Upon forming the corporations and periodically thereafter until about 1990, petitioner advanced money for the business enterprises with Aaland.  These advances are evidenced in the record by copies of some 21 promissory notes, all but one of

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue.

which are signed by Aaland, generally in his individual capacity, and sometimes in his capacity as president of Fidelity Construction Corp. of America or Magna Financial Development Corp.[2] The notes range in amounts from $1,000 to $100,000, and were payable as of a date certain at a specified rate of interest.

The advances were not fully repaid on time. In 1987 and again in 1992, petitioner and Aaland entered into debt consolidation agreements making Aaland personally responsible for repayment of the outstanding debts. As of December 31, 1992, the balance of the debt to petitioner was $335,200, excluding interest.

In 1979 and again in 1984, petitioner borrowed money from Aaland, as evidenced by two promissory notes signed by petitioner and totaling $37,344.

The record is sketchy as to petitioner's involvement in the corporations. Petitioner testified that he was a vice president "most of the time", but he had no office. He testified that he had authority to sign corporate checks "for a while. I don't know how long, but not very long." He testified that he was involved in some management decisions and that he "helped now and then" in the corporations. His testimony strongly suggests, however, that his involvement with the corporations, apart from

---

[2] One note, dated May 21, 1984, in the amount of $39,301.25, is signed by Dean J. Ralston, who is identified on the note as vice president and secretary of Magna Financial Development Corp.

advancing money, was very limited.[3]  There is no evidence that he received any salary from the corporations.

Aaland became ill at an unspecified time in the early 1990's and subsequently died in 1993 or 1994.

On their 1992 joint Federal income tax return, petitioners claimed a business bad debt deduction with respect to Aaland's outstanding debt.  They carried back a portion of the resulting net operating loss to their 1990 taxable year, generating a full refund of the tax paid for that year, in the amount of $21,890. In the notice of deficiency for the 1990 taxable year, respondent disallowed the carryback of the net operating loss, resulting in a deficiency in the amount of the refund.  Respondent argues that the funds advanced by petitioner to Aaland gave rise to a nonbusiness bad debt in 1992 and therefore are deductible only as a short-term capital loss that cannot be carried back.[4]

Discussion

Section 166(a) generally allows a deduction for debts that become wholly or partially worthless within the taxable year.  In

---

[3] On direct examination, petitioner testified as follows:

Mr. O'Day:  Did you continue any types of activities with the corporations after you stopped farming [in 1984]?
Petitioner: Oh, yes.
Mr. O'Day:  What types of involvement did you have?
Petitioner: Like I had before.
Mr. O'Day:  What would those be?
Petitioner: Loan someone money like a darn fool.

[4] Respondent has not raised any issue as to whether the purported debts at issue in fact became worthless in 1992.

the case of a taxpayer other than a corporation, a loss from a nonbusiness debt that becomes worthless is treated as a short-term capital loss, section 166(d), and consequently is subject to the limitations of sections 1211 and 1212.

A nonbusiness debt is defined in section 166(d)(2) as "a debt other than--(A) a debt created or acquired * * * in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business."

The relevant inquiry is whether petitioner's advances were proximately related to his conduct of a trade or business; the determinative factor is his dominant motivation in incurring the debt.  See United States v. Generes, 405 U.S. 93, 103-104 (1972); sec. 1.166-5(a)(2), Income Tax Regs.

Petitioner testified that he formed the corporations with Aaland and advanced him money "As an investment to make more money."  Investing does not constitute a trade or business.  See Whipple v. Commissioner, 373 U.S. 193, 202 (1963); see also Higgins v. Commissioner, 312 U.S. 212 (1941); Deely v. Commissioner, 73 T.C. 1081 (1980), supplemented by T.C. Memo. 1981-229; Rollins v. Commissioner, 32 T.C. 604, 615 (1959), affd. 276 F.2d 368 (4th Cir. 1960).  Nor does petitioner's limited activity in aid of the business ventures with Aaland constitute a separate business.  Cf. Ferguson v. Commissioner, 253 F.2d 403 (4th Cir. 1958), affg. 28 T.C. 432 (1957).

Relying on Commissioner v. Groetzinger, 480 U.S. 23 (1987), petitioners argue that petitioner was in the trade or business of making loans because he made loans to Aaland on a regular basis and his primary purpose was to make money. In Groetzinger, the Supreme Court held that a gambler who spent 6 days a week at a race track for 48 weeks a year, and 60 to 80 hours a week on gambling-related activities, such as studying racing forms and programs, to the exclusion of all other employment, was engaged in the trade or business of gambling.

Petitioner's occasional advances to Aaland, though occurring over a long period of time, are not comparable to the full-time gambling activity described in Commissioner v. Groetzinger, supra. When he first made the advances to Aaland and until he retired some years later, petitioner made his living as a farmer. Petitioner does not contend that he ever had any money-lending activities apart from his dealings with Aaland and the corporations.

Moreover, the circumstances of petitioner's alleged money-lending activities do not bespeak a business. Although prior advances to Aaland remained undischarged, petitioner continued for years to make additional advances to him and his ventures exclusively. During this same period, petitioner borrowed significant sums from Aaland, rather than trying to collect the amounts Aaland owed him. The record is devoid of evidence that petitioner ever took any action, apart from entering into debt

consolidation agreements with Aaland, to enforce collection of principal or interest that Aaland owed him.

Viewed in its totality, the evidence in the record strongly suggests that petitioner's purported loans to Aaland were actually in the nature of contributions of risk capital, in return for which petitioner received his 20-percent ownership interests in the corporations and by which he sought to protect his initial investment.  Even assuming, however, that petitioner made bona fide loans to Aaland (and respondent has not argued otherwise), the record does not support a conclusion that petitioner had a separate business of lending money.  Cf. Sales v. Commissioner, 37 T.C. 576 (1961); Rollins v. Commissioner, supra at 613; Estate of Palmer v. Commissioner, 17 T.C. 702 (1951).

Accordingly, we sustain respondent's determination.

To reflect the foregoing,

Decision will be entered for respondent.